UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| MISSION BAY SKI & BIKE, INC., | ) No. 07 B 20870 |
| | ) |
| Debtor. | ) |
| | ) |
| RICHARD M. FOGEL, as trustee of the bankruptcy estate of Mission Bay Ski & Bike, Inc. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 A 55 |
| | ) |
| WILLIAM W. LINNEMANN; VALERIE GERVAIS; and FIRST AMERICAN BANK, an Illinois banking corporation, | ) |
| | ) |
| Defendants. | ) Judge Goldgar |

### MEMORANDUM OPINION

Before the court for ruling is the motion of plaintiff Richard M. Fogel ("Fogel"), trustee of the bankruptcy estate of debtor Mission Bay Ski & Bike, Inc. ("Mission Bay"), to strike certain affirmative defenses in the answer of defendant First American Bank (the "Bank") and also to strike the Bank's jury demand. For the reasons that follow, Fogel's motion to strike the affirmative defenses will be granted, but his motion to strike the jury demand will be denied.

#### 1. Background

The facts are taken from Fogel's complaint, the court's docket, and the

transcript of a hearing held on April 1, 2009. The complaint alleges that debtor Mission Bay was a seller of high-end bicycle equipment and accessories as well as other sports gear. Defendants William Linnemann and Valerie Gervais were the owners of Mission Bay. On February 28, 2007, Linnemann and Gervais entered into a stock purchase agreement to sell their interests in Mission Bay and a sister company to Lukasz Remiasz, David Remiasz, Troy Crady, and Aaron Post for $1.4 million. At the closing, Gervais and Linnemann received $1.1 million in cash plus a $300,000 promissory note from the four purchasers.

According to Fogel, the sale was not the typical sale of a small business but took the form of a leveraged buyout. *See Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 645 (3rd Cir. 1991) (defining the term). The $1.1 million payment was funded from a loan the Bank made, not to the purchasers, but to Mission Bay itself. In return, Mission Bay granted the Bank a first priority security interest in all of its assets and pledged a collateral account into which $1 million of the loan proceeds were to be placed. The loan was funded simultaneously with the closing of the sale. Linnemann and Gervais immediately deposited in the pledge account $1 million of the $1.1 million they received. Mission Bay obtained nothing of value in connection with the transaction.

Fogel alleges that at the time the loan was made, the Bank knew the loan would render Mission Bay insolvent (if it was not insolvent already), the purchasers had a combined net worth of less than $100,000, the purchasers had a combined annual income of less than $100,000, and Mission Bay would be unable to pay the

monthly debt service. Despite knowing all of this, the Bank went ahead with the loan, albeit only after Gervais and Linnemann agreed to deposit $1 million of the loan proceeds in the pledge account.

Fogel's complaint has eleven counts, but only four involve the Bank and so are relevant to the current motion. Counts I and II are fraudulent transfer claims under sections 548(a)(1)(B) and 544(b) of the Code, 11 U.S.C. §§ 548(a)(1)(B), 544(b). Both counts are directed at Linnemann, Gervais, and the Bank and seek to avoid the loan to Mission Bay, the Bank's security interest, and the transfer of the loan proceeds to Linnemann and Gervais. Count IX is a turnover claim against all three defendants under section 550, 11 U.S.C. § 550. Count XI (mistakenly numbered VII) is an objection under section 502(d), 11 U.S.C. § 502(d), to any claims the three defendants have asserted or might assert in the bankruptcy.

At this juncture, some procedural history is necessary. The Mission Bay bankruptcy did not start out in chapter 7 but was filed on November 7, 2007, as a chapter 11 case. In January 2008, Mission Bay as debtor-in-possession filed an adversary proceeding against Linnemann and Gervais. Captioned *Mission Bay Ski & Bike, Inc. v. William W. Linnemann and Valerie J. Gervais*, No. 08 A 55 (the "first action"), the complaint challenged (among other things) the sale and loan transactions involving Linnemann, Gervais, and the Bank and alleged fraudulent transfer claims under sections 548(a) and 544. Linnemann and Gervais answered the complaint and asserted affirmative defenses.

In June 2008, Mission Bay and the four purchasers filed a second adversary

proceeding, this time against the Bank. Captioned *Mission Bay Ski & Bike, Inc., et al. v. First American Bank*, No. 08 A 442 (the "second action"), the complaint challenged (among other things) the transactions involving Linnemann, Gervais, and the Bank and alleged a fraudulent transfer claim under section 548(a). Mission Bay took the unusual tack of remarking in the body of the complaint that the two actions involved "the same subject matter and similar claims," and that a separate action had been filed only because the Bank had not consented to an extension of a filing deadline set in a December 2007 cash collateral order. Mission Bay suggested it would be "more efficient" to consolidate the adversary proceedings.

The Bank moved to dismiss the complaint in the second action. The motion was granted in part and denied in part. (Notably, the motion was denied as to the fraudulent transfer count attacking the sale and loan transactions.) Mission Bay and the four purchasers filed their amended complaint in October 2008. In mid-November, the Bank filed its answer and asserted affirmative defenses. The Bank did not demand a jury in its answer, nor did the Bank file a separate jury demand. *See* Fed. R. Civ. P. 38 (made applicable by Fed. R. Bankr. P. 9015(a)).

At this point, Mission Bay's efforts to reorganize foundered. Two weeks after the Bank answered the complaint in the second action, the U.S. Trustee's motion for appointment of a chapter 11 trustee was granted, and Fogel was approved as trustee. In early December, the case was converted to one under chapter 7, and Fogel was appointed trustee in the chapter 7 case.

As trustee of Mission Bay's bankruptcy estate, Fogel inherited the first action

against Linnemann and Gervais and the second action against the Bank. In March 2009, Fogel moved under Rule 41 to dismiss the second action without prejudice or alternatively under Rule 42 to consolidate it with the first action. He also moved for leave to amend his complaint in the first action to add the Bank as a defendant.

Fogel's goal in pursuing the two motions was economy. As he explained in presenting them, "[t]here is one key event that involves both sets of defendants, the loan transaction that is sought to be avoided . . . . And rather than have overlapping causes of action and two complaints pending seeking overlapping relief, we ask that we be allowed to dismiss the second-filed case, or in the alternative, if not dismiss it, to . . . consolidate it into the first." (Tr. dated 4/1/09 at 8). He continued: "I think dismissal of the second case, and leave to file the amended complaint, makes the most sense." (*Id.*). In response, the Bank's counsel expressed no preference: "If the consolidation works better for everyone's paperwork here . . . that would be fine with us." (*Id.*). Because Fogel preferred dismissal and dismissal seemed easier, the second action was dismissed without prejudice. Fogel was allowed to file his amended complaint in the first action adding the Bank as a defendant.

In June 2009, the Bank filed its answer to the amended complaint in the first action. The answer purports to assert twelve affirmative defenses to Counts I and II: (1) "solvency," (2) "reasonably equivalent value," (3) "good faith transferee for value," (4) "attempt to recover for the benefit of entities other than unsecured creditors," (5) failure to state a claim, (6) in pari delicto, (7) estoppel, (8) waiver, (9)

Case 08-00055 Doc 100 Filed 09/09/09 Entered 09/09/09 16:23:34 Desc Main
Document Page 6 of 18


laches, (10) unclean hands, (11) single satisfaction, and (12) "preservation of defenses." Each defense consists of one sentence (except for the fourth defense which has two), and the first four defenses along with the eleventh state that the action is barred "to the extent that" a certain state of affairs exists. As defenses to Counts IX and XI, the answer incorporates the first twelve and adds two more: (13) ordinary course, and (14) new value.

The same day that it filed an answer to the amended complaint, the Bank also filed a separate jury demand.

Fogel now moves to strike six of the Bank's affirmative defenses because they are not affirmative defenses at all and another five because they are pled only as conclusions. Fogel also moves to strike the Bank's jury demand on the ground that the Bank has waived its right to trial by jury.

### 2. Discussion

Fogel's motion to strike the affirmative defenses will be granted. As he rightly argues, the affirmative defenses are either not affirmative defenses or else are pled improperly. His motion to strike the jury demand, however, will be denied. The Bank has not waived its right to jury trial.

#### a. Affirmative Defenses

Fogel is correct, first of all, that many of the Bank's affirmative defenses are defective. The defenses he challenges will therefore be stricken.

Rule 12(f) allows the court to "strike from a pleading an insufficient defense."

Fed. R. Civ. P. 12(f) (made applicable by Fed. R. Bankr. P. 7012(b)). Motions to strike are sparingly used, *Kmart Corp. v. Uniden Am. Corp. (In re Kmart Corp.)*, 318 B.R. 409, 413 (Bankr. N.D. Ill. 2004), and are disfavored, *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991), because often they serve only to delay, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Motions to strike can be useful, however, as a way to "remove unnecessary clutter from the case," and then "they serve to expedite, not delay." *Id.*; *see also Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006).

In this district, courts typically assess the sufficiency of an affirmative defense with a three-step analysis. *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008); *De Lage Landen Fin. Servs., Inc. v. M.D.M. Leasing Corp.*, No. 07 C 45, 2007 WL 4355037, at *2 (N.D. Ill. Dec. 10, 2007); *Reis Robotics*, 462 F. Supp. 2d at 905. The first step is to determine whether the matter is appropriately pled as an affirmative defense. *Reis Robotics*, 462 F. Supp. 2d at 905. The second is to determine whether the defense is adequately pled under Rules 8 and 9. *Id.* The third is to determine whether the defense is sufficient under the standard in Rule 12(b)(6). *Id.* Affirmative defenses will be stricken "only when they are insufficient on the face of the pleadings." *Heller*, 883 F.2d at 1294.

### i. Defenses Challenged as Non-Defenses

Fogel attacks six of the Bank's defenses at the first step, arguing they are not in fact affirmative defenses. He is correct about all but one, and that defense is deficient for a different reason.

Rule 8(c)(1) declares that a party responding to a pleading "must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1) (made applicable by Fed. R. Bankr. P. 7008(a)). An "affirmative defense" essentially takes the form of the old common law plea in confession and avoidance. *Gwin v. Curry*, 161 F.R.D. 70, 71 (N.D. Ill. 1995). It "requires a responding party to *admit* a complaint's allegations but then . . . assert that for some legal reason [the responding party] is nonetheless excused from liability." *Reis Robotics*, 462 F. Supp. 2d at 906 (quoting *Menchaca v. American Med. Response of Ill., Inc.*, 6 F. Supp. 2d 971, 972 (N.D. Ill. 1998) (emphasis in original)); *see also Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*, No. 99 C 8237, 2000 WL 1222043, at *1 (N.D. Ill. Aug. 22, 2000).

Five of the six defenses Fogel challenges (the first, second, fourth, eleventh, and twelfth) are indeed not affirmative defenses under this definition. In its first and second defenses, the Bank asserts that Fogel cannot recover to the extent Mission Bay was solvent or received reasonably equivalent value. In its fourth defense, the Bank asserts that Fogel cannot recover to the extent he is seeking to do so for the benefit of someone other than unsecured creditors. These purported defenses allege no new matter but simply deny allegations of the complaint, allegations the Bank has already denied in the body of its answer. A defense that consists of nothing more than a denial of the plaintiff's allegations is both "unnecessary and inappropriate." *Yash Raj Films (USA), Inc. v. Atlantic Video*, No. 03 C 7069, 2004 WL 1200184, at *3 (N.D. Ill. May 28, 2004); *see, e.g., Springer v.*

*Okaw Truss, Inc. (In re Top Flight Stairs & Rails, Ltd.)*, 398 B.R. 321, 324-25 (Bankr. N.D. Ill. 2008) (striking defenses on this ground). The first, second, and fourth defenses will be stricken.

The eleventh defense likewise is not an affirmative defense. In its eleventh defense, the Bank asserts that Fogel cannot recover more than a single satisfaction of his claims from the various defendants. As Fogel notes, however, this limit on his potential recovery expressly appears in section 550(d) of the Code, and it applies whether the Bank pleads it as a defense or not. The Bank has not explained how the single satisfaction limit in section 550(d) meets the definition of an affirmative defense and has cited no authority suggesting that it does. The eleventh defense will be stricken as well.

It should be noted that the four defenses just discussed (along with the third, a defense Fogel has not challenged) are defective for another reason. The Bank alleges each defense "to the extent" certain matters are true. So, for example, the second defense says the transfers are not avoidable "*to the extent* that the Debtor received reasonably equivalent value." That is impermissible. To allege a defense, a defendant must assert that the plaintiff's claim is barred because certain affirmative matters *are* true, not merely that the claim will be barred *if* they turn out to be true. To plead the second defense here, then (and ignoring the problem that it is not really a defense), the Bank had to say that the action was barred because the debtor *did* receive reasonably equivalent value. Alleging only that the claim is barred "*to the extent* the debtor received reasonably equivalent value" takes

no stand on the facts and avoids a plaintiff's obligations under Rule 9011(b)(3). *See Gargin v. Morrell*, 133 F.R.D. 504, 506 (E.D. Mich. 1991) (noting that affirmative defenses "not *then* and *there* reasonably supported in fact and law" violate Rule 11 (emphasis in original)).

The Bank's twelfth defense is not an affirmative defense either. In its twelfth defense, the Bank purports to "preserve[ ] and reserve[ ] the right to assert such additional or other affirmative defenses that may be discovered." A reservation of unpled defenses is not a defense of any kind, much less an affirmative one. It is also unnecessary. Although failure to plead an affirmative defense can waive the right to present evidence on the defense at trial, as a practical matter waiver is rare. *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982). "Affirmative defenses – like complaints – are protected by the direction of Rule 15(a) that courts are to grant leave to amend pleadings 'freely . . . when justice so requires.'" *Id.* (quoting what is now Fed. R. Civ. P. 15(a)(2)); *see also Heller*, 883 F.2d at 1294. If discovery reveals a new affirmative defense, Rule 15 permits the Bank to seek leave to amend its answer to assert the defense, and leave will be granted unless the amendment would somehow unfairly prejudice Fogel. The twelfth defense will be stricken.

The fifth defense, finally, will also be stricken, though not for the reason Fogel advances. In its fifth defense, the Bank declares that "[e]ach and every purported cause of action in the complaint fails to state facts sufficient to constitute a cause of action." Fogel contends this, too, is not a proper defense. District court

decisions disagree over whether failure to state a claim, usually raised by motion, can serve as an affirmative defense. *Compare, e.g., Illinois Wholesale Cash Register, Inc. v. PCG Trading, LLC*, No. 08 C 363, 2009 WL 1515290, at *2 (N.D. Ill. May 27, 2009) (cannot be pled as a defense), *with Paramont Props.*, 588 F. Supp. 2d at 860 (can be pled as a defense). The rules, however, make clear that failure to state a claim is indeed a defense (though perhaps not technically an "affirmative" one, *see id.*) and can be asserted in an answer. Rule 12(b) expressly describes failure to state a claim as a "defense." Fed. R. Civ. P. 12(b). Rule 12(h)(2)(A) says that failure to state a claim may be raised "in any pleading allowed . . . under Rule 7(a)." Fed. R. Civ. P. 12(h)(2)(A). One pleading allowed under Rule 7(a) is, of course, "an answer to a complaint." Fed. R. Civ. P. 7(a)(2).

But the defense of failure to state a claim must still meet the notice-pleading requirements of Rule 8(a). *See Paramont Props.*, 588 F. Supp. 2d at 860-61; *Rao v. Covansys Corp.*, No. 06 C 5451, 2007 WL 141892, at *2 (N.D. Ill. Jan. 17, 2007). A defendant cannot merely provide a "bare recitation of the legal standard . . . without a short and plain statement of the basis" for the defense. *Jackson v. Methodist Med. Ctr. of Ill.*, No. 06-1235, 2007 WL 128001, at *2 (C.D. Ill. Jan. 11, 2007); *see also Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 803-04 (N.D. Ill. 2000). The Bank's fifth defense consists of a single sentence asserting the conclusion that each claim in Fogel's complaint is insufficient under Rule 12(b)(6). The Bank offers no explanation why that is true. The fifth defense will therefore be stricken, and the Bank will be given leave to amend. *See Heller*, 883 F.2d at 1294.

### ii. Defenses Challenged as Conclusions

Fogel next attacks five of the remaining defenses (the sixth through tenth) at the second step of the analysis, contending they have the same defect as the fifth defense: they are pled as conclusions and fail to comply with Rule 8(a). Again, Fogel is correct.

Affirmative defenses are pleadings and so are subject to all pleading requirements under the Federal Rules. *Heller*, 883 F.2d at 1294; *Reis Robotics*, 462 F. Supp. 2d at 904. That means affirmative defenses must meet the notice-pleading standards of Rule 8(a) as the Supreme Court recently interpreted them in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009). *See Safeco Ins. Co. of Am. v. O'Hara Corp.*, No. 08-CV-10545, 2008 WL 2558015, at *1 (E.D. Mich. June 25, 2008) (*Twombly* standards apply to affirmative defenses); *Holtzman v. B/E Aerospace, Inc.*, No. 07-80551-CIV, 2008 WL 2225668, at *2 (S.D. Fla. May 29, 2008) (same). Under *Twombly* and *Iqbal*, a party cannot rely on mere conclusions but must allege at least some facts. *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555-56. The facts alleged must be sufficient not only to give notice of the nature of the claim but to show the claim "'is plausible on its face.'" *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see generally Brooks v. Ross*, ___ F.3d ___, ___, 2009 WL 2535731, at *4-5 (7th Cir. Aug. 20, 2009) (discussing *Iqbal* and *Twombly*).

The Bank's sixth through tenth defenses do not meet these requirements. Each is pled strictly as a legal conclusion (the trustee's claims are "precluded, in

whole or in part, by the doctrine of estoppel," "by the doctrine of waiver," "by the doctrine of laches," and so on) without any attempt to supply the facts that would give notice and demonstrate plausibility. This method of pleading defenses is unacceptable and indeed was unacceptable well before *Iqbal* and *Twombly*. *See, e.g., Heller*, 883 F.2d at 1295 (affirming decision to strike defenses that were "nothing but bare bones conclusory allegations"); *Stafford v. Connecticut Gen. Life Ins. Co.*, No. 95 C 7152, 1996 WL 197677, at *2 (N.D. Ill. April 22, 1996). The sixth through tenth defenses will be stricken with leave to amend. *Heller*, 883 F.2d at 1294.

### b. Jury Demand

The Bank's jury demand, on the other hand, will not be stricken. The Bank waived its right to trial by jury in the second action, true enough. But that action was voluntarily dismissed. The Bank has not waived its right in the first action.

Despite some suggestion to the contrary in its response brief, the Bank plainly waived its right to a jury trial in the second action. Under Rules 38(b)(1) and (2) (made applicable by Fed. R. Bankr. P. 9015(a)), a party demands a trial by jury by serving a written demand (either separately or as part of a pleading) "no later than 10 days after the last pleading directed to the issue is served" and by filing the demand. Under Rule 38(d), a party waives its right to a jury "unless its demand is properly served and filed." The "last pleading" for purposes of Rule 38(b)(1) is generally an answer to a complaint or a reply to a counterclaim. *Early v. Bankers Life & Cas. Co.*, 853 F. Supp. 268, 270 (N.D. Ill. 1994). The Bank filed its

Case 08-00055    Doc 100    Filed 09/09/09    Entered 09/09/09 16:23:34    Desc Main

answer in the second action on November 12, 2008. The answer contained no jury demand, and the Bank never filed a separate one. The Bank therefore waived its right to a jury trial. *See Chapman v. Frank*, No. 05 C 1254, 2008 WL 2338353, at *2 (E.D. Wis. June 6, 2008).

The waiver became irrelevant, though, when the second action – the action against the Bank – was voluntarily dismissed without prejudice. As the Bank correctly argues, a voluntary dismissal without prejudice renders the dismissed action "a nullity." *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir. 2003); *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990). It is as if the action "had never been filed." *Robinson v. Willow Glen Academy*, 895 F.2d 1168, 1169 (7th Cir. 1990); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2367 at 559 (3d ed. 2008). The dismissed action thus "carries down with it" all previous proceedings, pleadings, orders, and issues. *National R.R. Passenger Corp. v. International Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 48 (1st Cir. 1990) (internal quotation omitted).

Fogel's dismissal of the second action accordingly "wiped the slate clean." *Sandstrom*, 904 F.2d at 86. So when Fogel amended his complaint in the first action to add the Bank as a defendant, the amendment was no different from any other amendment adding a new defendant to an action. The Bank was entitled to demand a jury in the manner and the time permitted by Rule 38(b). And the Bank did so, filing an answer to Fogel's amended complaint on June 3, 2009, and a separate jury demand the same day. The demand was timely. That the Bank had

waived a jury in the dismissed action did not affect its ability to demand a jury in the pending action to which it was added as a party. *Cf. City of South Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002) (finding state's waiver of Eleventh Amendment defense in first action did not prevent assertion of defense in second action when first action had been voluntarily dismissed without prejudice).

Although no case appears to address this precise situation, the conclusion that the Bank has not waived its jury right follows from cases considering a related one: an action in which the plaintiff inadvertently waives a jury and then moves for a voluntary dismissal with the sole purpose of refiling the action and demanding a jury in the refiled action. Not surprisingly, courts have proved hostile to these motions. *See, e.g., Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997); *Paturzo v. Home Life Ins. Co.*, 503 F.2d 333, 336 (4th Cir. 1974); *Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 71 (2d Cir. 1967); *Vassalos v. Hellenic Lines, Ltd.*, 482 F. Supp. 906, 909 (E.D. Pa. 1979). Implicit in the hostility, though, is a recognition that a voluntary dismissal revives the waived jury right, permitting the plaintiff "to use indirect methods to obtain those rights he had forfeited through his own lack of diligence." *Paturzo*, 503 F.2d at 336. That, of course, is not a concern here, because the party contending its right was revived is not the party who sought voluntary dismissal. But if a voluntary dismissal revives a plaintiff's right to jury trial, it surely revives a defendant's right.

That said, something about the outcome here seems amiss. Everyone realized that Fogel wanted to pursue the estate's claims against Linnemann,

Gervais, and the Bank in a single action for the sake of economy. At the hearing on Fogel's motions, the Bank not only did not oppose that goal but was indifferent to how it was achieved: by consolidation of the actions, or by dismissal of one action and then amendment in the other. Had the actions in fact been consolidated, the Bank's waived jury trial right would not have been revived. *See, e.g., Vesper Constr. Co. v. Rain for Rent, Inc.*, 602 F.2d 238, 241 (10th Cir. 1979). Because the second action was voluntarily dismissed, however, the Bank received a new opportunity to demand a jury. Ironically, Fogel's rational decision to choose dismissal and amendment over consolidation could end up more costly to the estate (since jury trials are typically more involved than bench trials). Still, the consequences of proceeding under Rule 41 rather than Rule 42 are inescapable.

In support of his contention that the Bank has no right to a jury trial, Fogel argues that the Bank lost its right well before the filing of either action. The right was lost, Fogel says, when the Bank entered into an agreed cash collateral order early in the case, thereby submitting its claim to the equitable jurisdiction of the bankruptcy court.

The problem with Fogel's argument is that the argument itself is waived – for two reasons. First, Fogel fails to make the argument until his reply brief, depriving the Bank of a chance to respond. An argument raised for the first time in a reply brief is waived. *Gonzalez v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009); *In re Farrar-Johnson*, 353 B.R. 224, 227 n.3 (Bankr. N.D. Ill. 2006). Second, the argument is undeveloped and for the most part unsupported. In particular, Fogel fails to cite

any authority holding that the mere entry of an agreed cash collateral order treating a creditor's secured claim waives the creditor's Seventh Amendment rights. He also fails to confront a possible flaw in his position: by the time the two actions were filed, the Bank no longer had a claim in the bankruptcy. *Cf. Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) (finding no waiver where creditor withdrew claim before trustee filed action). The court has no obligation to spot issues like these and make Fogel's arguments for him. Perfunctory, undeveloped, and unsupported arguments are waived as well. *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008); *Schechter v. Weiler (In re Blair)*, 330 B.R. 206, 213-14 (Bankr. N.D. Ill. 2005).

Because the Bank has not waived its right to jury trial, Fogel's motion to strike the Bank's jury demand will be denied. Because a jury has been demanded, however, the Bank must promptly move to withdraw the reference; otherwise, the Bank's right to jury trial will indeed be waived. *HA2003 Liquidating Trust v. J.P. Morgan Partners (SBIC), LLC (In re Ha-Lo Indus., Inc.)*, 326 B.R. 116, 123-24 (Bankr. N.D. Ill. 2005).[1]

### 3. Conclusion

The motion of plaintiff Richard M. Fogel to strike certain affirmative defenses in the answer of defendant First American Bank is granted. The first, second, fourth, eleventh, and twelfth defenses are stricken. The fifth, sixth, seventh, eighth, ninth, and tenth defenses are stricken with leave to amend. First

---

[1] It is hard to fathom why, in these economic times, the Bank is so eager to defend a fraud claim before a jury. Presumably the Bank knows what it is doing.

American Bank's amended answer is due on or before September 23, 2009. The motion of plaintiff Richard M. Fogel to strike First American Bank's jury demand is denied. First American Bank must file its motion to withdraw the reference on or before October 9, 2009, or a jury will be deemed waived. A separate order will be entered in accordance with this opinion.

Dated: September 9, 2009

_____
A. Benjamin Goldgar
United States Bankruptcy Judge